**Opinion issued April 1, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00292-CV

————————————

**CHRISTUS HEALTH GULF COAST (AS AN ENTITY, D/B/A CHRISTUS ST. CATHERINE HOSPITAL, AND FORMERLY D/B/A CHRISTUS ST. JOSEPH HOSPITAL), Appellant**

**V.**

**LINDA G. CARSWELL, Appellee**

———————————————————————————————

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Case No. 2005-36179**

———————————————————————————————

## SUPPLEMENTAL OPINION

The panel opinion issued in this case on August 29, 2013. *See Christus*

*Health Gulf Coast v. Carswell*, --- S.W.3d ---, No. 01-11-00292-CV, 2013 WL

4602388 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet. h.).  We issue this Supplemental Opinion to address arguments raised by appellant CHRISTUS Health Gulf Coast ("Christus") in its Motion for Partial Rehearing En Banc and accepted by the Opinion Dissenting from the Denial of En Banc Review.

Appellee Linda G. Carswell sued Christus in this litigation for damages for medical negligence under the Medical Liability & Insurance Improvement Act ("the MLIIA") after her husband, Jerry Carswell, died suddenly and unexpectedly while an in-patient at CHRISTUS St. Catherine Hospital ("St. Catherine") in January 2004.  Carswell brought these medical negligence claims on her own behalf and on behalf of Jerry's estate.  Carswell also asserted in this same litigation claims for post-mortem fraud, breach of fiduciary duty, and negligence ("the post-mortem claims") arising from Christus's attempt to obtain her consent to having its affiliate, SJ Associated Pathologists, L.C. ("SJAP"), do the sole autopsy on Jerry.  These post-mortem claims alleged breach of fiduciary duty, fraud, and conspiracy by Christus and St. Catherine to commit a fraudulent cover-up of the circumstances under which Jerry Carswell died and his cause of his death and thus to prevent discovery of the necessary facts and evidence to prove Carswell's medical negligence liability claims.  These claims were not brought under the MLIIA and, this Court held in its August 29, 2013 opinion, do not fall within its scope.  *See Christus Health Gulf Coast*, 2013 WL 4602388, at \*20.

2

We disagree with Christus and the Opinion Dissenting from the Denial of En Banc Review that these post-mortem claims *do* fall within the scope of the MLIIA.

Unlike Carswell's medical negligence liability claims, Carswell's post-mortem claims were all based on fraudulent misrepresentations made *after Jerry Carswell's death* by the St. Catherine employees responsible for his in-patient care at the time of his death and the disposition of his remains. These misrepresentations were made to *Carswell*, who was not a Christus patient, to her son, who likewise was not a patient, and to the Harris County Medical Examiner's Office ("HCMEO"), the governmental agency that is required to perform autopsies on all hospital patients who die unexpectedly. The HCMEO does not provide medical care to patients and is therefore not a health care provider.[1] Carswell contended, and the jury found, that these false representations were made to induce Carswell to allow Christus to use an affiliated entity, rather than the HCMEO, to conduct Jerry's autopsy and to induce the HCMEO to decline to perform the independent forensic autopsy it is required by law to perform when the circumstances of an in-patient's death are unexplained or suspicious. In sum, Carswell alleged a post-mortem conspiracy on the part of Christus employees to fraudulently prevent the development of the evidence necessary to prove her health care liability claims for medical negligence against Christus.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10), (12) (Vernon Supp. 2013) (defining "health care" and "health care provider").

Prior to trial, Christus moved for summary judgment on Carswell's post-mortem claims on the ground that these claims were subject to the MLIIA, and thus subject to its statutory restrictions. The trial court denied this motion.

Following trial on both Carswell's medical negligence claims under the MLIIA and her post-mortem claims beginning on August 11, 2010, a jury found in favor of Christus on the medical negligence claims and in favor of Carswell on her post-mortem claims. Carswell elected to recover on her post-mortem claims in fraud. In its amended final judgment, the trial court awarded Carswell, in her individual capacity only, $1,000,000 on her post-mortem fraud claim and $750,000 in exemplary damages. The trial court also entered non-monetary sanctions and a $250,000 sanctions award against Christus for discovery abuse. Christus appealed the jury verdict against it on Carswell's post-mortem claims, the trial court's sanctions order, and the trial court's award of pre-judgment interest. Carswell did not appeal the adverse jury verdict on her medical negligence claims under the MLIIA, and those claims are not before this Court. In an opinion issued August 29, 2013, we affirmed the judgment in favor of Carswell on her post-mortem claims, modified and reduced the pre-judgment interest award, affirmed the non-monetary sanctions imposed against Christus, and vacated the monetary sanctions award against Christus. *See Christus Health Gulf Coast*, 2013 WL 4602388, at *27.

4

Christus has now filed a Motion for Partial Rehearing En Banc contesting the panel's opinion only insofar as it affirms the liability award in favor of Carswell on her post-mortem claims. The En Banc Court has voted to deny en banc review. Justice Bland issues an Opinion Dissenting from the Denial of En Banc Review ("Dissenting Opinion"). She would reverse the panel's judgment on Carswell's post-mortem claims. We issue this Supplemental Opinion to respond to Christus's arguments in support of its Motion for Partial Rehearing En Banc and to the Dissenting Opinion. We decline to reconsider our August 29, 2013 opinion.

The Dissenting Opinion opens with the statement, "A hospital's management of an autopsy is a 'professional or administrative service[] directly related to health care,'" followed by a citation to Civil Practice and Remedies Code subsection 74.001(a)(13)—a definitional provision of the MLIIA, sections 74.001–.507 of the Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001–.507 (Vernon 2011 & Supp. 2013). This opening sentence incorrectly implies that subsection 74.001(a)(13)—the subsection that defines a "health care liability claim" for purposes of the MLIIA—specifically references autopsies as a covered professional or administrative service directly related to health care that is included by definition within the scope of the MLIIA. *See id.* § 74.001(a)(13) (Vernon Supp. 2013). This is an incorrect reading of this definitional provision of the statute, which is set out both in the panel's August 29, 2013 opinion and in the

5

Dissenting Opinion, along with subsections 74.001(a)(10), defining "health care," and 74.001(a)(19), defining "medical care." *See* 2013 WL 4602388, at *17–*20; Slip Op. at 2.

Rather than *supporting* the Dissenting Opinion's assertion that a claim concerning a hospital's management of an autopsy is a health care liability claim, the plain language of subsection 74.001(a)(13), defining "health care liability claim" for purposes of the MLIIA, directly *contradicts* that assertion, as does the plain language of subsection 74.001(a)(10), defining "health care," and the plain language of subsection 74.001(a)(19), defining "medical care."

Subsection 74.001(a)(13) provides:

"*Health care liability claim*" means a cause of action against a health care provider or physician for *treatment, lack of treatment, or other claimed departure from accepted standards of medical care*, or health care, or safety or professional or administrative services *directly related to health care, which proximately results in injury to or death of a claimant*, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (emphasis added).

Subsection 74.001(a)(10) provides:

"*Health Care*" means *any act or treatment* performed or furnished, or that should have been performed or furnished, by any health care provider *for, to, or on behalf of a patient during the patient's medical care,* treatment, or confinement.

*Id*. § 74.001(a)(10) (emphasis added).

And subsection 74.001(a)(19) defines "*medical care*" as

6

*any act defined as practicing medicine* under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state *for, to, or on behalf of a patient during the patient's care, treatment, or confinement*.

*Id.* § 74.001(a)(19) (emphasis added); *see also* TEX. OCC. CODE ANN. § 151.002(a)(13)(A) (Vernon Supp. 2013) (defining "practicing medicine" as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method or the attempt to effect cures of those conditions, by a person who publicly professes to be a physician or surgeon . . . .").

Here, Jerry Carswell was treated by physicians at St. Catherine and died while a patient there. All claims against Christus arising from allegations that Christus committed acts of negligence that proximately resulted in Jerry's injury or death were medical negligence claims under the MLIIA, and were brought as such. The jury found in favor of Christus on these claims. Carswell did not appeal the judgment in Christus's favor on her MLIIA claims.

The only claim on which Carswell elected to recover in the amended final judgment was her post-mortem fraud claim, in which she recovered in her individual capacity and not in her capacity as the representative of Jerry's estate. This is the only part of the judgment below that was appealed. Jerry suffered no injury from the autopsy and is not a "claimant" on this claim for purposes of section 74.001(a)(13). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13)

7

(defining "health care liability claim"); *see also id.* § 74.001(a)(2) (defining "claimant" as "a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim"). Claims brought by a non-patient for damages that she herself suffered due to actions taken after the death of a patient, rather than "during the patient's medical care, treatment, or confinement," are outside the scope of a "health care liability claim." *See id.* § 74.001(a)(13).

Christus's and the Dissenting Opinion's definition of "health care liability claim" ignores the express limitations on the definition of "health care" and "medical care" as *patient* care and broadens the definitions of a "health care liability claim" to any claim whatsoever against a hospital, whether the claim directly arises from the hospital's treatment of a patient or not. There is no support in either statutory or case law for this expansion of the scope of the MLIIA, and we decline to be the first court to substitute this definition of a "health care liability claim" for the definition expressly set out in the Act.

Christus has appealed only the damages award entered against it on Carswell's post-mortem claims, which are not based on any treatment, lack of treatment, or any act of Christus "during the patient's[, Jerry's,] medical care, treatment, or confinement." *See id.* § 74.001(a)(10) (defining "health care"). Nor were any of Carswell's post-mortem claims based on Jerry's medical care, i.e., on

8

"any act defined as practicing medicine under Section 151.002, Occupations Code" that was "performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient[, Jerry] during [his] care, treatment, or confinement." *See id.* § 74.001(a)(19) (defining "medical care" as "any act defined as practicing medicine under Section 151.002, Occupations Code . . . ."); *see also* TEX. OCC. CODE ANN. § 151.002(a)(13)(A) (defining "practicing medicine"). Nor did the acts complained of in Carswell's post-mortem claims result in injury or death to the patient, Jerry, who was already dead when Christus employees committed the wrongful acts that were the basis of the post-mortem claims. Thus, the post-mortem acts on which judgment was entered against Christus and in Carswell's favor do not satisfy the statutory requirements that define a claim as a "health care" liability claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10), (13).

In short, Carswell did not seek any damages in her post-mortem claims for any harm within the scope of the terms "health care liability claim," "health care," or "medical care," as required for a claim for damages to fall within the scope of the MLIIA. *See Christus Health Gulf Coast*, 2013 WL 4602388, at *17–20. Thus, Christus's reliance on these definitional sections of the MLIIA to support its claim on appeal for relief from the judgment in Carswell's favor is misplaced.

9

The Dissenting Opinion advances a construction of section 74.001(a)(13) that supports Christus's contentions but that both contradicts the plain language of the applicable definitional subsections of the MLIIA cited above and fails to give meaning to the critical limiting language in the statute, as required by the rules of statutory construction. *See* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage"); *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (statutes are reviewed *de novo* to ascertain and give effect to Legislature's intent; "[w]here text is clear, text is determinative of that intent"; legislative intent is discerned from "the plain meaning of the words chosen" unless enforcing plain language of statute as written would produce absurd results"); *see also* TEX. GOV'T CODE ANN. § 311.011(b) (words and phrases that have acquired particular meaning through legislative definition "shall be construed accordingly").

The August 29, 2013 panel opinion addresses in detail the body of case law supporting the construction of subsections 74.001(a)(10), (13) and (19) adopted in that opinion. *See Christus Health Gulf Coast*, 2013 WL 4602388, at *17–20. Both Christus and the Dissenting Opinion ignore this authority, with the exception of one case analyzed by the panel opinion, *Swanner v. Bowman*, No. 05-02-00040-CV, 2002 WL 31478769 (Tex. App.—Dallas Nov. 7, 2002, pet. denied) (mem.

op.), which the Dissenting Opinion relies on as support for its construction of subsection 74.001(a)(13). This case is discussed in the August 29, 2013 panel opinion and is inapplicable on its facts. *See Christus Health Gulf Coast*, 2013 WL 4602388, at \*18.

In addition, the Dissenting Opinion cites as support for its argument an opinion of this Court, not previously brought to the attention of the panel and therefore not addressed in the August 29, 2013 opinion, *CHCA Bayshore, L.P. v. Ramos*, 388 S.W.3d 741 (Tex. App.—Houston [1st Dist. 2012, no pet.). This case addressed the question of whether the emotional distress suffered *by a hospital patient* due to the negligent disposition of the remains of her fetus following a dilation and curettage procedure performed as a result of her miscarriage was a health care liability claim within the scope of the MLIIA. *See id*. at 743. This Court held that it was. *Id*. at 747. The claimant in *Ramos* (a hospital patient), her claims (negligence and negligent infliction of emotional distress), the facts of the case (the distress caused the patient by the disposition of the remains of her unborn child), and the holding (finding these claims to be claims within the scope of the MLIIA) are all inapplicable to the issues in this case. We decline to extend the reasoning in that case to claims made by a *non-patient* regarding fraudulent misrepresentations that were made to *her* and caused *her* harm *after the death* of a Christus patient and that did *not* result in a Christus patient's injury or death. The

11

facts and circumstances pertinent to the post-mortem claims appealed by Christus, unlike the facts and circumstances pertinent to the claims made in *Ramos*, require that Carswell's post-mortem claims be treated as claims falling outside the scope of the MLIIA under the plain language of sections 74.001(a)(10), (13), and (19) of that Act and that Christus's contention on appeal to the contrary be overruled.

A majority of the panel, joined by a majority of the En Banc Court, has voted to deny Christus's Motion for Partial Rehearing En Banc. Moreover, we specifically observe that to adopt Christus's and the Dissenting Opinion's construction of the scope of a "health care liability claim," and of "health care" and "medical care," as defined by the MLIIA in Civil Practice and Remedies Code section 74.001 would create a sweeping scope for the MLIIA that goes far beyond any construction that its language will support, that is not supported by any prior authority, and that would serve as an invitation to health care providers to conduct the exact type of wrongful cover-up of its negligent acts that *are* within the scope of the statute that Christus was found to have conducted in this case. We decline to accept Christus's invitation or to reconsider our August 29, 2013 opinion.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Brown. Justice Brown, dissenting.

The En Banc Court consists of Chief Justice Radack and Justices Jennings, Keyes, Higley, Bland, Sharp, Brown, and Huddle.

Justice Bland, joined by Justices Brown and Huddle, dissenting from the denial of en banc reconsideration.

Justice Massengale, not participating.

13